UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| MICHAEL J. REIER,<br><br>Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY;<br><br>Defendant. | CIV. NO. 21-00382 LEK-KJM |

**ORDER: GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPEAL; REVERSING THE ADMINISTRATIVE LAW JUDGE'S DECISION; AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**

Plaintiff Michael J. Reier ("Plaintiff") filed his Complaint for Review of Social Security Disability Determination ("Complaint") on September 13, 2021, pursuant to 42 U.S.C. § 405(g). Plaintiff appeals from Administrative Law Judge Jesse Pease's ("ALJ") March 31, 2021 Decision ("Appeal").[1] The ALJ issued the Decision after conducting a telephonic hearing on

[1] The Decision, including the Notice of Decision – Unfavorable and the List of Exhibits, is available in the Administrative Record Dated November 17, 2021 ("AR") at 13-32. [AR, filed 1/24/22 (dkt. no. 9), Documents Related to Administrative Process (dkt. no. 9-3) at PageID.43-62.] On May 11, 2020, Plaintiff requested review of the Decision. [AR at 191-93 (dkt. no. 9-5 at PageID.223-25).] By notice dated July 9, 2021, the Appeals Council denied Plaintiff's request for review. [Notice of Appeals Council Action ("AC Notice"), AR at 1-6 (dkt. no. 9-3 at PageID.31-36).] Thus, the ALJ's Decision constitutes the final decision of Defendant Kilolo Kijakazi, Commissioner of Social Security ("the Commissioner"). [Id. at 1 (dkt. no. 9-3 at PageID.31).]

March 17, 2021. [Decision, AR at 16 (dkt. no. 9-3 at PageID.46).] The ALJ ultimately concluded that Plaintiff was not disabled under §§ 216(i) and 223(d) of the Social Security Act. [Id. at 28 (dkt. no. 9-3 at PageID.58).]

Plaintiff's Opening Brief was filed on March 22, 2022. [Dkt. no. 11.] The Commissioner filed the Answering Brief on June 24, 2022, and Plaintiff filed his Reply Brief on July 20, 2022. [Dkt. nos. 15, 16.] Oral argument on the Appeal was heard on August 26, 2022. For the reasons set forth below, Plaintiff's Appeal is granted in part and denied in part. The Appeal is granted, insofar as the ALJ's Decision is reversed as to the ALJ's rejection of Plaintiff's subjective testimony about the limiting effect of his psychological symptoms. The Appeal is denied in all other respects. The matter is remanded to the ALJ for further proceedings consistent with this Order.

**BACKGROUND**

On October 14, 2019, Plaintiff protectively filed a Title II application for disability and disability insurance benefits, alleging he was disabled as of August 3, 2013. Plaintiff's claim was denied, initially and on reconsideration. On January 29, 2020, Plaintiff filed a written request for a hearing. At the March 17, 2021 hearing, Plaintiff was also represented by his current local counsel. Plaintiff and Ronald Hatakeyama, an impartial vocational expert ("VE"), testified at

the hearing. See Decision, AR at 16 (dkt. no. 9-3 at PageID.46).

Plaintiff served in the United States Army ("Army") for sixteen years as a cook. At the time of his discharge, Plaintiff was an E5 sergeant, and he performed both cooking and supervising duties. [Social Security Administration Office of Disability Adjudication and Review Transcript of 3/17/21 hearing ("Hrg. Trans."), AR at 38-39 (dkt. no. 9-3 at PageID.68-69).] After his discharge from the Army, Plaintiff "[w]orked for the Navy DOD as a security guard." [Id. at 39 (dkt. no. 9-3 at PageID.69).] This was an armed position that included being posted at a gate, checking the perimeter of the facility, and occasionally assisting with loading. [Id. at 39-40 (dkt. no. 9-3 at PageID.69-70).]

Plaintiff testified that he has not worked since 2000. [Id. at 41-42 (dkt. no. 9-3 at PageID.71-72).] This appears to have been an error because Plaintiff's earnings records indicate that he earned income each year from 1993 through 2013, and he had no income after 2013. See Exh. 6D (Certified Earnings Record, dated 3/2/21), AR at 200-02 (dkt. no. 9-6 at PageID.233-35); Exh. 7D (Detailed Earnings Query, dated 3/2/21); AR at 203-07 (dkt. no. 9-6 at PageID.236-40); Exh. 8D (Summary Earnings Query, dated 3/2/21), AR at 208 (dkt. no. 9-6 at PageID.241).

## I. Plaintiff's Diagnoses and Prior Benefits Applications

Plaintiff asserted in the administrative proceedings that his disability began on August 3, 2013. On that date, Plaintiff was voluntarily admitted to the Tripler Army Medical Center ("Tripler") psychiatric ward (referred to as "3B2"). Plaintiff was discharged on August 7, 2013. [Exh. 2F,[2] AR at 492-96 (dkt. no. 9-8 at PageID.527-31) (Discharge Summary, entered 8/8/13).] During this time, Tripler staff spoke with Plaintiff's supervisor and discussed Plaintiff's likely PTSD diagnosis. [Id., AR at 494 (dkt. no. 9-8 at PageID.529).] Tripler staff discussed with Plaintiff the process to obtain a PTSD diagnosis in the VA system and the fact that a PTSD diagnosis and PTSD medications would likely result in the loss of the security clearance that Plaintiff required for his job. [Id., AR at 493 (dkt. no. 9-8 at PageID.528).] According to medical records, Plaintiff's PTSD diagnosis is based on "combat related psychological trauma including survivor's guilt from 1995-2011 service" and his triggers include "fireworks, crying babies, and June/August anniversary of events[.]" [Exh. 5F, AR

[2] Exhibit 2F is the Health Information Technology ("HIT") Medical Report from the Department of Veterans' Affairs ("VA"), for the period from August 7, 2013 to October 11, 2019. [AR 443-524 (dkt. no. 9-8 at PageID.478-559).]

at 573 (dkt. no. 9-9 at PageID.609) (part of note for Patient Consultation on 12/20/19).[3]]

On October 11, 2013, David A. Bremer, Ph.D., M.P.H., suggested a diagnosis of post-traumatic stress disorder ("PTSD"), based on information from Plaintiff's self-assessment. [Exh. 2F, AR at 501-02 (dkt. no. 9-8 at PageID.536-37) (Mental Health Diagnostic Study Note by Dr. Bremer on 10/11/13).] On February 28, 2014, Brian W. Kelley, Psy.D., also suggested a PTSD diagnosis and noted possible severe depression, based on Plaintiff's self-assessments. [Id. at 499-501 (dkt. no. 9-8 at PageID.534-36) (Mental Health Diagnostic Study Note by Dr. Kelley on 2/28/14).] On January 21, 2015, Desiree C. Cabinte, Ph.D., noted possible severe anxiety, based on Plaintiff's self-assessment. [Id. at 498-99 (dkt. no. 9-8 at PageID.533-34) (Mental Health Diagnostic Study Note by Dr. Cabinte on 1/21/15).] On March 30, 2018, Lauren Hodge, M.D., conducted a diagnostic assessment, and his self-assessment responses resulted in a score indicating very severe PTSD symptoms. [Id. at 497-98 (dkt. no. 9-8 at PageID.532-33) (Mental Health Diagnostic Study Note by Dr. Hodge on 3/30/18).]

[3] Exhibit 5F is the HIT Medical Report from The Queen's Health Systems, for the period from December 13, 2019 to January 2, 2020. [AR 571-95 (dkt. no. 9-9 at PageID.607-31).]

Plaintiff previously applied for disability insurance benefits on September 17, 2013, and that application was denied on December 30, 2013. He filed another application on January 6, 2015, and that application was denied on June 2, 2015. Plaintiff did not appeal those decisions. [Decision, AR at 16 (dkt. no. 9-3 at PageID.46).] The ALJ construed Plaintiff's current application as including a request to reopen those prior applications. However, the ALJ noted that: Plaintiff had not filed his current application within four years of those denials; Plaintiff did not present any evidence of fraud or other fault in the prior decisions; Plaintiff did not present evidence of any "other highly unusual circumstances which warrants reopening." [Id. (citation omitted).] Thus, the prior decisions were final and binding as to the period from the alleged onset date of August 3, 2013 to the date of the second decision, June 2, 2015, and the ALJ concluded that the res judicata doctrine applied. The ALJ dismissed the portion of Plaintiff's request for a hearing regarding the period from August 3, 2013 to June 2, 2015. Only the period from June 3, 2015 through the date last insured, December 31, 2018, was addressed in the Decision. [Id. at 16-17 (dkt. no. 9-3 at PageID.46-47).]

**II. Evidence Before the ALJ**

Plaintiff was admitted to the psychiatric ward of Tripler on January 14, 2016, with a chief complaint of homicidal ideations toward his ex-wife. He was discharged on January 16, 2016. [Exh. 2F, AR at 478-83 (dkt. no. 9-8 at PageID.513-18) (Discharge Summary signed on 1/20/16 by Christine Sanchez, M.S.A., and cosigned on 1/21/16 by Ernest Alaimalo, M.D.).] The staff noted PTSD and bipolar disorder as the diagnostic impression. [Id. at 478 (dkt. no. 9-8 at PageID.513).] At the hearing before the ALJ, Plaintiff testified there were other times during the relevant period when he was hospitalized at Tripler because of homicidal and suicidal ideations. Hrg. Trans. at 43 (dkt. no. 9-3 at PageID.73); see also id. at 45 (dkt. no. 9-3 at PageID.75) (referring to "multiple times").

At the hearing, when asked about the period "back around 2018 and before[,]" Plaintiff testified that he never went out and stayed in his room, isolating himself from his family. [Id. at 44 (dkt. no. 9-3 at PageID.74).] Plaintiff testified that he kept himself isolated because he believed it would not be safe for his family or people outside if he went out. [Id.] During that period, he would go for "[m]onths at a time" without leaving his house. [Id. at 45 (dkt. no. 9-3 at PageID.75).] Plaintiff never went out to see friends or other people. [Id. at 46-47 (dkt. no. 9-3 at PageID.76-77).] He also

testified that unfamiliar situations, such as new locations, were "[v]ery stressful" and caused his "anxiety [to] shoot[] up through the roof." [Id. at 47 (dkt. no. 9-3 at PageID.77).] In addition, it is difficult for him to concentrate on projects because his "mind is constantly racing" and he becomes distracted. [Id.]

On July 14, 2017, Plaintiff reported that he had a right stellate ganglion block on June 21, 2017, and he had a left stellate ganglion block on June 28, 2017.[4] [Exh. 5F, AR at 573 (dkt. no. 9-9 at PageID.609).] These improved his PTSD symptoms, but had to be repeated approximately every three months. A February 2, 2018 note reflected a bilateral stellate ganglion block in January 2018, but there is no subsequent note until June 7, 2019, and that note indicated Plaintiff wanted to repeat the stellate ganglion block, but he was having difficulty obtaining approval, and his PTSD symptoms were getting worse. [Id. at 573-74 (dkt. no. 9-9 at PageID.609-10).]

Plaintiff also testified that, during the relevant period, he had physical impairments - "severe L4-L5 lumbar

[4] A nerve block of the stellate ganglion in the neck can be used to provide relief for pain in the upper part of a patient's body. See John Hopkins Medicine, *Sympathetic Nerve Blocks for Pain*, https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/sympathetic-nerve-blocks-for-pain (last visited Dec. 29, 2022). In the instant case, they were used to provide Plaintiff with relief from his PTSD symptoms. See, e.g., Decision, AR at 21 (dkt. no. 9-3 at PageID.51).

damage," plantar fasciitis in both feet, and tinnitus. [Hrg. Trans. at 42 (dkt. no. 9-3 at PageID.72).] He had difficulty walking long distances, as well as difficulty standing or sitting for long periods of time. [Id.] He had multiple falls because of shooting pain down his leg. [Id. at 45 (dkt. no. 9-3 at PageID.75).] He estimated that he could only sit for ten minutes at a time before having to change position because of back pain. He also estimated that, during the relevant period, he would have to lie down four or five times in a day for fifteen to twenty minutes at a time, and this would happen as often as four or five times a week. [Id. at 46 (dkt. no. 9-3 at PageID.76).] Plaintiff testified that, from the relevant time period to the time of the hearing, his physical and psychological condition had gotten worse, and there was no improvement. [Id. at 47-48 (dkt. no. 9-3 at PageID.77-78).]

## III. The Decision and the Instant Appeal

In the Decision, the ALJ found that Plaintiff was insured, for purposes of the Social Security Act, through December 31, 2018. [Decision, AR at 19 (dkt. no. 9-3 at PageID.49).] At step one of the five-step sequential analysis to determine whether a claimant is disabled, the ALJ found that Plaintiff had not engaged in substantial gainful employment from June 3, 2015 through the date last insured, December 31, 2018. [Id.]

At step two, the ALJ found that, through December 31, 2018, Plaintiff "had the following severe impairments: post-traumatic stress disorder (PTSD); major depressive disorder (MDD); anxiety disorder; right foot plantar fasciitis; obesity; obstructive sleep apnea; lumbar strain; degenerative changes of the lumbar spine, with mild straightening of lumbar lordosis; and tinnitus." [Id. (citing 20 CFR 404.1520(c)) (emphasis omitted).] However, at step three, the ALJ found that none of Plaintiff's impairments, either individually or in combination, met or equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Id. at 20 (dkt. no. 9-3 at PageID.50) (citing 20 CFR 404.1520(d), 404.1525, 404.1526).]

In the step four analysis, the ALJ found that, through December 31, 2018, Plaintiff had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b), except: frequent postural activities; frequent stairs and ramps; cannot work around noise that is classified as loud or very loud; no hazardous machinery or unprotected heights; no ladders, ropes, or scaffolds; can have no customer service interaction with the public; can have occasional interaction with coworkers; and can adapt to infrequent and gradual workplace changes.

[Id.[5]] The ALJ found that Plaintiff's impairments could reasonably be expected to cause the symptoms Plaintiff described, but the totality of the evidence was not consistent with Plaintiff's statements and his hearing testimony about the intensity, persistence, and limiting effects of his symptoms. [Id. at 23 (dkt. no. 9-3 at PageID.53).] The ALJ's RFC finding was based upon the VE's testimony about the occupations that a hypothetical person, with certain limitations, could perform. See Hrg. Trans., AR at 49-50 (dkt. no. 9-3 at PageID.79-80). Plaintiff's counsel asked the VE whether there were any occupations that could be performed by a person, with the limitations listed by the ALJ, who would miss at least three work-days each month. The VE responded that there would not be any jobs that for that hypothetical individual. [Id. at 51 (dkt. no. 9-3 at PageID.81).]

The ALJ found that Plaintiff's testimony about the extent of his symptoms was inconsistent with other evidence in the record because Plaintiff

> reported no problems with bathing, caring for hair, shaving, feeding himself, using the toilet, preparing his own meals, driving, handling money, spending time with his girlfriend and children at home daily, going to church every other Saturday, following written and spoken instructions,

[5] Although not reflected in the RFC finding in the Decision, when the ALJ described the hypothetical worker to the VE, the ALJ included "frequent rests." See Hrg. Trans. at 49 (dkt. no. 9-3 at PageID.79).

> interacting with authority figures, and he has never been fired or laid off from a job because of problems getting along with other people ([Exh.] 4E/5). The claimant's girlfriend/caregiver Glenda Howard reported that the claimant prepares his own meals daily at lunch, he spends time with Ms. Howard and his kids everyday, he goes to church every other Saturday, he can follow written and spoken instructions very good, he can pay attention for short periods of time, and he gets along with authority figures ([Exh.] 3E).

[Decision, AR at 23 (dkt. no. 9-3 at PageID.53) (citing Exh. 4E (Function Report - Adult, signed by Plaintiff on 5/4/15 ("Function Report by Plaintiff")), AR at 235-42 (dkt. no. 9-7 at PageID.269-76); Exh. 3E (Function Report - Adult - Third Party, signed by Glenda Howard on 5/4/15 ("Function Report by Howard")), AR at 227-34 (dkt. no. 9-7 at PageID.261-68).[6]]

The ALJ characterized the record for the relevant period as "limited" and found that the information available about Plaintiff's physical and psychological impairments did not indicate greater limitations than what the ALJ included in the RFC finding.[7] [Id. at 24 (dkt. no. 9-3 at PageID.54).]

---

[6] When she completed the function report, Ms. Howard identified herself as Plaintiff's "Girlfriend/Caregiver." See Exh. 3E (Function Report by Howard), AR at 227 (dkt. no. 9-7 at PageID.261). Plaintiff and Ms. Howard apparently married at some point after that. See, e.g., Hrg. Trans., AR at 44 (dkt. no. 9-3 at PageID.74) (Plaintiff referred to Ms. Howard as his wife).

[7] Because Plaintiff's Appeal focuses upon the ALJ's rejection of his testimony about his psychological symptoms, see

(. . . continued)

The ALJ noted that, although Plaintiff was admitted from January 14 to 16, 2016 for, *inter alia*, homicidal ideation, he showed improvement by the time of discharge. [Id. (citing Exh. 2F/38-39).[8]] The discharge note stated:

> **MSE** on Day of Discharge:
>
> General Appearance: 39 y/o obese white male appears stated age, well-developed, well-nourished, appropriately dressed with good hygiene, appears comfortable sitting in chair.
>
> Attitude/Behavior: Cooperative, engaged, open.
>
> Psychomotor: Shaking right leg throughout interview
>
> Eye Contact: fair eye contact throughout
>
> Speech: Fluent, coherent, normal tone; somewhat halting speech, w/ slightly loud volume.
>
> Mood: good
>
> Affect: Mood congruent but mostly restricted, but laughs appropriately at times.
>
> Thought Content: Denies **suicidal** ideation; Denies **homicidal** ideation, no apparent delusions expressed or elicited, denies auditory or visual **hallucinations**
>
> Thought Process: Linear, concrete, rigid, coherent, goal-directed, future-oriented

---

Opening Brief at 3, 9, this Court will not discuss the ALJ's reasons for rejecting Plaintiff's testimony about his physical symptoms.

[8] Pages 36 to 41 of Exhibit 2F is the Discharge Summary, dated January 20, 2016 and signed by Dr. Cabinte and Dr. Beck. [AR at 478-83 (dkt. no. 9-8 at PageID.513-18).]

> Sensorium: Awake/alert/oriented to person, place, time, situation
>
> Cognition: Memory grossly intact normal
>
> Impulse Control/Insight/Judgment: Fair/Fair/Fair [based on recent events]

[Exh. 2F, AR at 481 (dkt. no. 9-8 at PageID.516) (emphases in original).] The ALJ noted that medical records reflected improvement in Plaintiff's PTSD symptoms with the stellate ganglion block treatments from July 14, 2017 to February 2, 2018. [Decision, AR at 24 (dkt. no. 9-3 at PageID.54) (citing Exh. 1F/4-5, 27, 28, 31, 38, 49, 52, 58, 65, 67-68, 70, 76, 82; 7F/2, 6, 97, 104-05).[9]] For example, the mental status observations in those cited records noted: "The patient is awake, alert and oriented to person, place, and time. Recent and remote memory are intact. Mood and affect are normal." [Exh. 1F/28, AR at 364 (dkt. no. 9-8 at PageID.399) (part of Progress Notes for 2/2/18 Patient Consultation by Roy M. Esaki, M.D., with The Queen's Medical Center Pain and Spine Clinic).] Dr. Esaki made the same entry on other occasions. See Exh. 1F/31, AR at 367 (dkt. no. 9-8 at PageID.402) (part of Dr. Esaki's notes for 1/5/18 Patient Consultation); Exh. 1F/38,

[9] Exhibit 1F is the HIT Medical Report from The Queen's Health Systems, dated November 11, 2014 to July 19, 2019. [AR at 337-442 (dkt. no. 9-8 at PageID.372-478).] Exhibit 7F is VA office treatment records from October 2, 2017 to April 23, 2020. [AR at 608-742 (dkt. no. 9-10 at PageID.645-779).]

AR at 385 (dkt. no. 9-8 at PageID.420) (part of Dr. Esaki's notes for 10/20/17 Patient Consultation); Exh. 1F/52, AR at 388 (dkt. no. 9-8 at PageID.423) (part of Dr. Esaki's notes for 9/15/17 Patient Consultation); Exh. 1F/67, AR at 403 (dkt. no. 9-8 at PageID.438) (part of Dr. Esaki's notes for 7/14/17 Patient Consultation); Exh. 1F/70, AR at 406 (dkt. no. 9-8 at PageID.441) (part of Dr. Esaki's notes for 6/5/17 New Patient Consultation).

The ALJ considered medical evidence from the VA, but did not consider any VA decisions regarding disability or Plaintiff's ability to work because the Social Security Administration does not consider such rulings by other governmental entities or non-governmental agencies to be valuable or persuasive. [Id. at 25 (dkt. no. 9-3 at PageID.55) (citing Exh. 2F/77; 4F/34; 7F; 9F; 20 CFR 404.1520(c)).[10]]

The ALJ found that any opinions, including those outside of the relevant period, which were contrary to the RFC finding were "not persuasive, not well supported, and inconsistent with the medical findings[.]" [Id. (citing

[10] Exhibit 4F is the HIT Medical Report from the VA for the period from November 13, 2019 to December 20, 2019. [AR at 537-70 (dkt. no. 9-9 at PageID.573-606).] Exhibit 9F is the VA Pacific Islands Healthcare System Progress Notes for the period from August 7 to December 2, 2020. [AR at 753-812 (dkt. no. 9-11 at PageID.791-850).]

Exh. 1A; 3A; 2F/78-82; 9F).[11]] The ALJ noted Plaintiff's psychiatric admissions for homicidal ideations and Plaintiff's other "history of suicidal and homicidal ideations manifested by anger with loud noises and crying babies[,]" and stated that, to the extent they were consistent with the other medical evidence, they were incorporated in the RFC. [Id. at 25-26 (dkt. no. 9-3 at PageID.55-56) (citing Exh. 1F/27, 28, 31, 38, 49, 52, 58, 65, 67-68, 70, 76, 82).] Thus, the ALJ found that the RFC finding was "supported by the totality of the medical opinion evidence, the objective medical findings, and the other medical evidence found in the record[,]" and that no greater limitations were warranted. [Id. at 26 (dkt. no. 9-3 at PageID.56).]

The ALJ found that, based on his RFC, Plaintiff was incapable of returning to any of his past relevant work. [Id.]

At step five, the ALJ noted that Plaintiff was in the "younger individual" category on December 31, 2018. [Id. (citing 20 CFR 404.1563).] Further, Plaintiff has at least a high school education. [Id. (citing 20 CFR 404.1564).] The Decision does not address whether Plaintiff has transferable job skills because the ALJ found that, using the Medical-Vocational

[11] Exhibit 2F pages 78 to 82 is the Mental Health C&P Examination Consult note/Initial Post Traumatic Stress Disorder (PTSD) Disability Benefits Questionnaire, signed by Helio C. Perez, M.D., on October 3, 2013, for a September 30, 2013 examination ("Perez Questionnaire"). [AR 520-24 (dkt. no. 9-8 at PageID.555-59).]

Rules framework, Plaintiff was "not disabled," irrespective of the transferable skills issue. [Id. (citing SSR 82-41; 20 CFR Part 404, Subpart P, Appendix 2).] The ALJ found that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could make a successful adjustment to the following jobs that exist in significant numbers in the national economy: office helper, routing clerk, and general inspector. [Id. at 27-28 (dkt. no. 9-3 at PageID.57-58).] The ALJ therefore found that Plaintiff was not under a disability from June 3, 2015 to December 31, 2018, the date last insured. [Id. at 28 (dkt. no. 9-3 at PageID.58) (citing 20 CFR 404.1520(g)).]

As previously noted, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the Commissioner's final decision. [AC Notice, AR at 1 (dkt. no. 9-3 at PageID.31).]

In the instant Appeal, Plaintiff argues the Decision should be reversed because: the ALJ failed to provide specific, clear and convincing reasons for rejecting his testimony about the severity of his mental health symptoms; the ALJ improperly rejected the opinions of Helio Perez, M.D.; and these errors were not harmless, in light of the VE's testimony that the hypothetical worker with three or more absences every month could not be employed. Plaintiff asks this Court to reverse the

ALJ's Decision and remand the case for proper consideration of his testimony and Dr. Perez's opinions.

**STANDARDS**

"A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner of Social Security." Concannon v. Saul, Civ. No. 19-00267-ACK-RT, 2020 WL 1492623, at *2 (D. Hawai`i Mar. 27, 2020), *aff'd*, No. 20-15732, 2021 WL 2941767 (9th Cir. July 13, 2021).

**I. Review of Social Security Decisions**

The Ninth Circuit conducts a de novo review of a district court's order in a social security appeal. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014). Thus, in reviewing the Commissioner's decision, this Court applies the same standards that the Ninth Circuit applies.

A court will only disturb the Commissioner's decision if it is not supported by substantial evidence or if it is based on legal error. Id. "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (citation and internal quotation marks omitted). In reviewing a decision by the Commissioner, a district court must consider the entire record as a whole. Id. Where the record, considered as a whole, could support either affirmance or

reversal, the district court must affirm the decision. Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016). To ensure a court does not substitute its judgment for the ALJ's, it must "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (quoting Treichler, 775 F.3d at 1098).

## II. Five-Step Analysis

The following analysis applies in cases involving review of the denial of social security disability benefits.

> To determine whether an individual is disabled within the meaning of the Social Security Act, and therefore eligible for benefits, an ALJ follows a five-step sequential evaluation. See 20 C.F.R. § 404.1520. The burden of proof is on the claimant at steps one through four. See Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities," Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001) (citing [20 C.F.R.] §§ 404.1571–404.1572, 416.971–416.975). At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," § 404.1520(a)(4)(ii), meaning that it significantly limits the claimant's "physical or mental ability to do basic work activities," [20 C.F.R.] § 404.1522(a); see Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).
>
> At step three, the ALJ evaluates whether the claimant has an impairment, or combination of impairments, that meets or equals the criteria of

any of the impairments listed in the "Listing of Impairments" (referred to as the "listings"). See § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1 (pt. A). The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity." § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (footnote omitted).[[12]] If an impairment does not meet a listing, it may nevertheless be "medically equivalent to a listed impairment" if the claimant's "symptoms, signs, and laboratory findings are at least equal in severity to" those of a listed impairment. [20 C.F.R.] § 404.1529(d)(3). But a claimant cannot base a claim of equivalence on symptoms alone. Even if the claimant alleges pain or other symptoms that makes the impairment more severe, the claimant's impairment does not medically equal a listed impairment unless the claimant has signs and laboratory findings that are equal in severity to those set forth in a listing. § 404.1529(d)(3). If a claimant's impairments meet or equal the criteria of a listing, the claimant is considered disabled. § 404.1520(d).

If the claimant does not meet or equal a listing, the ALJ proceeds to step four, where the ALJ assesses the claimant's residual functional capacity (RFC) to determine whether the claimant can perform past relevant work, § 404.1520(e), which is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted

[12] Sullivan has been superseded by statute on other grounds. See, e.g., Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir. 2013).

> long enough for [the claimant] to learn to do it," [20 C.F.R.] § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled. § 404.1520(f).
>
> At step five, the burden shifts to the agency to prove that "the claimant can perform a significant number of other jobs in the national economy." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002). To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines found at 20 C.F.R. Pt. 404 Subpt. P, App. 2,4 or on the testimony of a vocational expert. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." § 404.1560(b)(2). An ALJ may also use "other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor." Id.
>
> Throughout the five-step evaluation, the ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

Ford v. Saul, 950 F.3d 1141, 1148-49 (9th Cir. 2020) (some alterations in Ford) (footnotes omitted).

## DISCUSSION

### I. Whether It Was Error to Discount Plaintiff's Testimony

Plaintiff testified that, during the relevant period, he "pretty much" stayed in his room, isolated from his family,

and did not go out of the house. [Hrg. Trans., AR at 44 (dkt. no. 9-3 at PageID.74).] When asked to explain the reason for his isolation, he stated: "I just don't feel safe. I don't feel safe with myself. I don't feel safe for the people outside. I don't feel safe for my family, so only [sic] way for me to eliminate that is just to isolate . . . ." [Id.] During the relevant period, he would be unable to leave his house for "[m]onths at a time." [Id. at 45 (dkt. no. 9-3 at PageID.75).] The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" [Decision, AR at 23 (dkt. no. 9-3 at PageID.53).] The ALJ found that Plaintiff's statements about the extent of, and the limitations caused by, his symptoms were "not entirely consistent with" the record, but the ALJ did not expressly find there was evidence of malingering. See id.

The Ninth Circuit has stated:

> To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ must give specific, clear, and convincing reasons for rejecting the testimony by identifying which testimony the ALJ found not credible and explaining which evidence contradicted that testimony.

Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017) (brackets, citation, and internal quotation marks omitted).

Further, those reasons must be supported by substantial evidence. Marsh v. Colvin, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015).

**A. Activities of Daily Living**

Contradiction of the claimant' testimony and "meet[ing] the threshold for full-time work[ are] the two grounds [the Ninth Circuit] ha[s] recognized for using daily activities to form a basis of an adverse credibility determination." Smith v. Kijakazi, 14 F.4th 1108, 1114 (9th Cir. 2021) (citing Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007)).

> Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. See, e.g., Cohen [v. Sec'y of Dep't of Health & Human Servs.], 964 F.2d [524,] 530–31 [(6th Cir. 1992)] (ruling that a claimant should not be penalized for attempting to maintain some sense of normalcy in her life); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits). Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.

Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (some alterations in Reddick) (some citations omitted).

Plaintiff argues the ALJ did not identify clear and convincing reasons for rejecting Plaintiff's testimony because

the ALJ: improperly relied on Plaintiff's activities of daily living; failed to consider Plaintiff's function reports in their entirety; and failed to explain why Plaintiff's daily activities were inconsistent with an ability to work. In rejecting Plaintiff's statements about his difficulty interacting with people, concentrating, "interacting, concentrating, . . . isolation, depression, anxiety, and need for reminders," the ALJ relied upon Plaintiff's ability to follow written and spoken instructions and interact with authority figures in his daily activities. See Decision, AR at 23 (dkt. no. 9-3 at PageID.53); see also *supra* Background Section III(quoting the ALJ's discussion of Plaintiff's activities of daily living). The ALJ also noted that Plaintiff spent time with Ms. Howard and his children on a daily basis, and he attended church every other week. See Decision, AR at 23 (dkt. no. 9-3 at PageID.53).

First, although noting that Plaintiff attended church every other week, the ALJ did not address Ms. Howard's report that Plaintiff needs someone to accompany him when he goes to church. See id. at 21, 23 (dkt. no. 9-3 at PageID.51, PageID.53); Exh. 3E (Function Report by Howard), AR at 231 (dkt. no. 9-7 at PageID.265). Further, the ALJ did not address other portions of Function Report by Howard and the Function Report by Plaintiff that are consistent with Plaintiff's testimony. Cf. Platt v. Saul, Case No. 19-cv-00192-DKW-WRP, 2020 WL 435354, at

*6 (D. Hawai`i Jan. 28, 2020) ("The problems with the ALJ's analysis, therefore, are two-fold: (1) the ALJ ignored all of the other statements that Platt made in the function report, even though his statements were entirely consistent with the activities upon which the ALJ relied; and (2) the ALJ failed to explain why Platt's reported activities rendered him able to work.").

The Function Report by Howard states that she does all of the shopping for their household. Plaintiff accompanies her, but these shopping trips are approximately thirty minutes long. See Exh. 3E, AR at 230 (dkt. no. 9-7 at PageID.264). Plaintiff also states Ms. Howard does all of their shopping, and he goes with her once a week. [Exh. 4E (Function Report by Plaintiff), AR at 238 (dkt. no. 9-7 at PageID.272).] Other than shopping and going to church, Plaintiff only goes out of the house when he has an appointment. See id.; Exh. 3E, AR at 230 (dkt. no. 9-7 at PageID.264). These limited activities outside of the home are consistent with Plaintiff's testimony, and the ALJ did not explain how these activities indicate that Plaintiff is able to maintain full-time employment.

Similarly, interacting with his wife and children on a daily basis is not an indication that Plaintiff is capable of the interactions that would be required in a work environment, even with the limitations included in his RFC. See Decision, AR

at 22 (dkt. no. 9-3 at PageID.52) (Plaintiff's RFC included the limitations that he: "can have no customer service interaction with the public" and "can have occasional interaction with coworkers"). A claimant's ability to interact with his significant other and his children at home is

> not readily "transferrable to a work environment." Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014) (internal quotation marks omitted); see also Smolen [v. Chater], 80 F.3d [1273,] 1284 n.7 [(9th Cir. 1996)] ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment . . . .").

See Diedrich v. Berryhill, 874 F.3d 634, 643 (9th Cir. 2017) (some alterations in Diedrich).[13] Like the claimant in Diedrich, Plaintiff's anxiety would make interactions in a work setting much more difficult than his interactions with Ms. Howard and his children at home. See id.; Decision, AR at 23 (dkt. no. 9-3 at PageID.53) (noting Plaintiff "testified that when he goes out, his anxiety shoots thru the roof, his nightmares kick in, and he is anxious"). Thus, Plaintiff's activities of daily living do not constitute clear and convincing reasons supporting

---

[13] Diedrich has been superseded in part by regulation on other grounds, see Frederick C. v. Saul, Case No. 8:20-cv-00018-KES, 2020 WL 6135073, at *3 (C.D. Cal. Oct. 16, 2020), as has Smolen, see 20 C.F.R. § 404.1529(c)(3).

the rejection of Plaintiff's subjective testimony about the limiting effects of his psychological symptoms.

**B. Medical Records**

The ALJ also relied upon Plaintiff's medical records to support the rejection of Plaintiff's subjective testimony about the limiting effects of his psychological symptoms. Specifically, the ALJ noted that Plaintiff improved after hospitalizations in January 2015 and January 2016 for, among other things, homicidal ideations. See Decision, AR at 24 (dkt. no. 9-3 at PageID.54). However, Plaintiff testified that there were other times during the relevant period when he was hospitalized because of homicidal or suicidal ideations. Further, it appears that Plaintiff avoided additional hospitalizations by isolating himself. See Hrg. Trans., AR at 43 (dkt. no. 9-3 at PageID.73). Any improvement that Plaintiff experienced from hospitalization appears to have been temporary, and reoccurring hospitalizations would also impact Plaintiffs employability. Plaintiff's improvement after prior hospitalizations does not constitute a clear and convincing reason for the rejection of Plaintiff's subjective testimony about the limiting effects of his psychological symptoms.

The ALJ also cited

> stellate ganglion blocks for PTSD from July 14, 2017 to February 2, 2018, and thereafter, with 50-75% improvement in the frequency and intensity

> of PTSD flares for about 2.5 months, despite stopping medications (e.g., [Exhs.] 1F/4-5, 7F/97, 104-105), and notes of good resolution of hypervigilance and hyperarousal symptoms with injections ([Exh.] 7F/2, 6).

[Decision, AR at 24 (dkt. no. 9-3 at PageID.54).] While Plaintiff did experience improvement with the stellate ganglion blocks, they had to be repeated frequently, Plaintiff's PTSD symptoms would worsen as the blocks wore off, and the blocks were not always available to Plaintiff. See Exh. 5F, AR at 573-74 (dkt. no. 9-9 at PageID.573-74) (History of Present Illness section of 1/2/20 Hospital Encounter note by Dr. Esaki); Hrg. Trans., AR at 43 (dkt. no. 9-3 at PageID.73) (Plaintiff testified that he was previously receiving the blocks, but after he moved, "they offer them, but it is really hard to get them").

The Ninth Circuit has stated:

> But we have previously observed that in many mental health conditions, "[c]ycles of improvement and debilitating symptoms are a common occurrence." Garrison [v. Colvin], 759 F.3d [995,] 1017 [(9th Cir. 2014)]. We therefore held that "in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement . . . and to treat them as a basis for concluding a claimant is capable of working." Id. Physician reports of "improvement" are thus not "sufficient to undermine the repeated diagnosis of [the alleged mental health] conditions" in an earlier physician's report or render the earlier medical opinions "inconsistent" and so not credible. Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1200-1201 (9th Cir. 2008).

Smith, 14 F.4th at 1115-16 (alterations in Smith).

Because the improvement that Plaintiff experienced from the stellate ganglion blocks was temporary and Plaintiff did not have consistent access to the blocks, the improvement after the blocks does not constitute a clear and convincing reason for the rejection of his subjective testimony about the limiting effects of his psychological symptoms.

**C. Ruling**

This Court therefore concludes that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective testimony about the limiting effects of his psychological symptoms. See Laborin, 867 F.3d at 1155 (9th Cir. 2017). Further, even if the ALJ's articulated reasons could be considered clear and convincing, this Court concludes that the ALJ's reasons were not supported by substantial evidence in the record. See Marsh, 792 F.3d at 1174 n.2.

Plaintiff's Appeal is granted as to his argument that the ALJ erred in rejecting his subjective testimony about the limiting effect of his psychological symptoms.

**II. Dr. Perez's Medical Opinions**

The Perez Questionnaire was signed on October 3, 2013. [Exh. 2F, AR at 520-24 (dkt. no. 9-8 at PageID.555-59).] Dr. Perez noted Plaintiff's symptoms included, *inter alia*, "[n]ear-continuous panic or depression affecting the ability to function independently, appropriately and effectively";

"[d]ifficulty in establishing and maintaining effective work and social relationships"; and "[i]mpared impulse control, such as unprovoked irritability with periods of violence." [Id. at 523-24 (dkt. no. 9-8 at PageID.558-59).] Dr. Perez stated Plaintiff's "psychiatric history and current symptoms [were] consistent with" PTSD and major depressive disorder. [Id. at 524 (dkt. no. 9-8 at PageID.559).] He opined that Plaintiff had "[o]ccupational and social impairment with reduced reliability and productivity," and that sixty-five percent of this impairment was attributable to his PTSD, and thirty-five percent was attributable to his major depressive disorder. [Id. at 520-21 (dkt. no. 9-8 at PageID.555-56).]

VA determinations of disability and employability are not binding on the Social Security Administration, but it does consider all of the supporting evidence underlying the VA's decisions, when the evidence is submitted in accordance with the applicable regulations. See 20 C.F.R. § 404.1504. The Decision notes this principle, and states the ALJ "considered all of the medical evidence from the [VA] . . . ." [Decision, AR at 25 (dkt. no. 9-3 at PageID.55).] However, the ALJ found that some of the opinions in the VA records, including those in the Perez Questionnaire, were "not persuasive, not well supported, and inconsistent with the medical findings," to the extent they were contrary to the ALJ's RFC findings. [Id.] The ALJ did not

include a specific analysis of the Perez Questionnaire. In the instant Appeal, Plaintiff argues the ALJ erred by failing to fully consider the medical evidence underlying Dr. Perez's opinions and by failing to consider the supportability and consistency of his opinions.

**A. Compliance with § 404.1504**

Plaintiff acknowledges that the Decision expressly states the ALJ considered the medical evidence from the VA, but he argues that such a statement is insufficient to establish that the ALJ did in fact consider the medical evidence that Dr. Perez relied upon. See Opening Brief at 22-23. As previously noted, the Perez Questionnaire is part of Exhibit 2F, which is the VA HIT Medical Report for the period from August 7, 2013 to October 11, 2019, [AR 443-524 (dkt. no. 9-8 at PageID.478-559)].[14] In addition to the Perez Questionnaire, the ALJ cited multiple medical records within Exhibit 2F. See, e.g., Decision, AR at 19-20 (dkt. no. 9-3 at PageID.49-50) (citing Exh. 2F/67-68; Exh. 2F/37; Exh. 2F/38, 39); id. at 21 (dkt. no. 9-3 at PageID.51) (citing Exh. 2F/37); id. at 24 (dkt.

[14] The AR includes other exhibits with VA medical records that, but those exhibits include records prepared after the Perez Questionnaire, and therefore those records could not have been the basis for his medical opinions. See, e.g., Exh. 4F (VA HIT Medical Report for the period from November 1, 2019 to January 3, 2020), AR at 537-70 (dkt. no. 9-9 at PageID.573-606).

no. 9-3 at PageID.54) (citing Exh. 2F/15; Exh. 2F/66-67; Exh. 2F/65; Exh. 2F/42); id. at 25 (dkt. no. 9-3 at PageID.55) (citing Exh. 2F/77). None of the records from Exhibit 2F that are cited in Decision were for encounters that occurred prior to the preparation of the Perez Questionnaire. However, the ALJ's discussion of various portions of Exhibit 2F shows that the ALJ reviewed and considered Exhibit 2F, in its entirety.[15] This Court therefore rejects Plaintiff's argument that the ALJ failed to comply with § 404.1504 because the ALJ failed to consider the medical evidence that Dr. Perez considered in forming his opinions.

**B. Supportability and Consistency**

Plaintiff also argues the ALJ erred by failing to conduct the supportability and consistency analysis as to Dr. Perez's opinions. See 20 C.F.R. § 404.1520c (governing claims filed on or after March 27, 2017). Section 404.1520c(a) states the Social Security Administration

> will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior

[15] The Court notes that the only substantive records within Exhibit 2F that may have been considered by Dr. Perez were a September 12, 2013 discharge summary, [Exh. 2F, AR at 489-92 (dkt. no. 9-8 at PageID.524-27),] and an August 7, 2013 discharge summary, [Exh. 2F, AR at 492-96 (dkt. no. 9-8 at PageID.527-31)].

> administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)).

The Perez Questionnaire was signed on October 3, 2013, based on a September 30, 2013 examination. See Exh. 2F, AR 520, 524 (dkt. no. 9-8 at PageID.555, PageID.559). The ALJ denied Plaintiff's request for a hearing regarding the period from August 3, 2013 to June 2, 2015 because that period was addressed in two prior applications for disability insurance benefits, which were denied, and the ALJ ruled that those denials had a res judicata effect. See Decision, AR at 16-17 (dkt. no. 9-3 at PageID.46-47). Plaintiff has not appealed the ALJ's ruling regarding the res judicata effect of the prior denials. Under the circumstances of this case, this Court concludes that the ALJ did not err by failing to conduct the consistency and supportability analysis as to Dr. Perez's medical opinions.

### C. Ruling

Plaintiff's Appeal is denied as to his arguments regarding the ALJ's consideration of Dr. Perez's opinions.

## III. **Whether the Errors Were Harmless**

This Court has concluded that the ALJ erred by rejecting Plaintiff's subjective testimony about the limiting effects of his psychological symptoms. Plaintiff testified that, during the relevant time period, there would be "[m]onths at a time" when he was unable to leave his house. [Hrg. Trans., AR at 45 (dkt. no. 9-3 at PageID.75).] The VE testified that a person with similar limitations to those in Plaintiff's RFC who would miss at least three work-days each month could not be employed. See id. at 51 (dkt. no. 9-3 at PageID.81). Based on the VE's testimony, the ALJ's error were not harmless. See Treichler, 775 F.3d at 1099 ("An error is harmless if it is 'inconsequential to the ultimate nondisability determination.'" (quoting Alaska Dep't of Envtl. Conserv. v. EPA, 540 U.S. 461, 497, 124 S. Ct. 983, 157 L. Ed. 2d 967 (2004))).

In light of this Court's rulings, the ALJ's ultimate ruling that Plaintiff was not disabled was not supported by substantial evidence. To the extent that Plaintiff's Appeal raises arguments which are not specifically addressed in this Order, it is not necessary for this Court to reach those arguments. This Court makes no findings or conclusions regarding those arguments. Plaintiff's Appeal is granted insofar as the ALJ's Decision, including the ruling that

Plaintiff is not disabled, is reversed. The case is remanded to the ALJ for further proceedings consistent with this Order.

## CONCLUSION

For the foregoing reasons, Plaintiff's appeal of the Administrative Law Judge's March 31, 2021 Decision is HEREBY GRANTED IN PART AND DENIED IN PART. The Appeal is GRANTED, insofar as the ALJ's Decision is REVERSED as to the ALJ's rejection of Plaintiff's subjective testimony about the limiting effect of his psychological symptoms. The Appeal is DENIED as to Plaintiff's arguments asserting error in the ALJ's consideration of Dr. Perez's opinions. This case is REMANDED to the ALJ for further proceedings consistent with the instant Order.

There being no remaining issues in this case, the Court DIRECTS the Clerk's Office to enter judgment and close on **January 17, 2023**, unless any party files a timely motion for reconsideration of the instant Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 30, 2022.




/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge